**UNITED STATES**

*v.*

**Edward J. LANEN.**

**Crim. No. JFM–88–0431.**

United States District Court, D. Maryland.

June 28, 1989.

board's jurisdiction will include grievances predating the collective bargaining agreement.

Hollis Raphael Weisman, Asst. U.S. Atty., Hyattsville, Md., for plaintiff.

Steven Weinberg, Steinmetz & Weinberg, Washington, D.C., for defendant.

## MEMORANDUM

MOTZ, District Judge.

On July 20, 1988, Edward Ramos of the U.S. Park Police was on plainclothes assignment at the Holly Picnic area in Greenbelt Park. Ramos was standing at the sink in the men's restroom at about 7:00 p.m. when the Defendant Edward Lanen walked in and went to an adjacent sink. Defendant asked Ramos if he had seen someone in a small black car because he had a date to meet him. When Ramos responded no, Defendant walked over to the doorless toilet stall farthest from the sinks.

As Ramos started to walk out of the restroom, he noticed that Defendant was standing in the stall moving his arm back and forth in a rapid motion. Accounts differ as to whether Defendant was at this time facing the toilet or facing the window. It is not clear from the record where the toilet was in relation to the window. However, the effect of facing either was to have Defendant's back to officer Ramos. At this point, Ramos stopped and watched Defendant for about a minute. During this time, Defendant glanced back at Ramos more than once. Finally, he turned to his right exposing himself to the officer. Ramos immediately placed Defendant under arrest for an obscene act.

On December 1, 1988, Defendant was brought to trial before U.S. Magistrate James E. Kenkel. Kenkel found him guilty of "Disorderly Conduct" in violation of 36 C.F.R. 2.34 and sentenced him to one year probation (with the special condition that he not enter Greenbelt Park during the period of his probation) and a $500 fine, $250 of which was suspended. Defendant has appealed to this court.

## DISCUSSION

Defendant was charged with violating 36 C.F.R. 2.34 which states in relevant part:

(a) A person commits disorderly conduct, when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following acts:

\*　　\*　　\*　　\*　　\*　　\*

(2) ... [E]ngages in a display or act that is obscene.

Although at trial Defendant denied engaging in an obscene act, on appeal he does not challenge the Magistrate's finding that in fact he did engage in such an act. Instead, Defendant focuses his attack on the findings that (1) he intended to cause alarm or knowingly or recklessly created a risk of causing alarm and (2) the alarm that allegedly resulted was somehow "public."

A district court's review of a magistrate's findings is similar to the review conducted by the Court of Appeals over a decision of the United States District Court:

[The court must] view the evidence in the light most favorable to the government, and ... give to the government the bene-

fit of all reasonable inferences favorable to the government's case that logically may be drawn from the evidence.

*United States v. Archambault,* 670 F.2d 800, 801 (8th Cir.1982). If, after applying this standard, the court finds that "a rational trier of fact could conclude beyond a reasonable doubt that the defendants were guilty," *United States v. Klose,* 552 F.Supp. 982, 984 (E.D.Pa.1982), then the court must affirm the conviction.

Defendant argues that because Ramos stood looking at him for almost a minute instead of exiting the restroom and chose to stand in the only spot in the restroom where a person could see into the stall, Ramos in effect invited Defendant to expose himself. Defendant argues that he altered his behavior in response to Ramos's conduct. And, because he believed that he was acting in response to Ramos' "invitation", he could not have intended to alarm Ramos and therefore his conduct falls outside the purview of 36 C.F.R. 2.34.

Furthermore, Defendant asserts that the fact that he never left the stall and, in exposing himself, only turned halfway around, is evidence that his actions were directed solely at Ramos and not at the "public." Defendant argues that it was Ramos' curiosity that caused the exposure to take place and that, absent that, Defendant's actions would not have been seen. Therefore, he concludes, the exposure was not such that it could be seen by casual observers and thus was not "public."

■ Defendant's reasoning misses the mark. The fact that obscene actions are directed at a single person—in this case a police officer—does not make them private if they take place in a "public" place. The Maryland Court of Appeals has said:

> "The place where the offense is committed is a public one if the exposure be such that it is likely to be seen by a number of casual observers.... An exposure is "public" or in a "public place," if it occurs under such circumstances that it could be seen by a number of persons, if they were present and happened to look." *A number of cases have*

*held that it is immaterial that the exposure is seen by only one person if it occurs at a place open or exposed to the public and where anyone who happened to have been nearby could have seen if he had looked.*

*Messina v. State,* 212 Md. 602, 605–6, 130 A.2d 578 (1957). Thus, the issue in this case is not whether or not Defendant intended to expose himself to Officer Ramos. The issue is whether or not Defendant's exposure was "public" and whether, by exposing himself, Defendant knowingly or recklessly created a risk of causing alarm.

■ There is no question that Defendant's exposure was public. It occurred in an open stall in a public restroom. It may be that Officer Ramos would not have witnessed the exposure if he had remained at the sink or exited the restroom and that in order for him to see what Defendant was doing he had to move towards the stall. That only means, however, that there were some spots in the restroom from which Defendant's actions could not be seen and others from which they could be seen. If those areas from which Defendant's actions could be seen were private, then Defendant's argument might have merit. In fact, however, those areas were as accessible to the public as any in the restroom. It is not hard to imagine a member of the public moving to the same spot where Ramos was in order to see if the stall was being used.

Defendant's activity in the stall was therefore "public." It remains to determine whether, by that activity, Defendant knowingly or recklessly created a risk of causing alarm. Defendant suggests that no alarm could result from his actions as long as he was facing away from the observer and that no alarm could result to Officer Ramos when Defendant in fact turned since, by his presence there, Ramos had indicated an awareness of Defendant's activity.

■ Again, Defendant's argument is without merit. First, it is not unreasonable to conclude that a person observing someone moving his arm in a rapid back and forth motion and too far from the toilet to

be urinating (as Ramos testified Defendant was doing) would be aware of what was happening and become alarmed. Secondly, whether or not it was an "invitation" that caused the Defendant to turn, the fact remains that he did expose himself in the midst of an obscene act. Ramos might not have been alarmed but there was certainly the risk that other members of the public who might have entered the bathroom in the interim would have been.

For these reasons, Defendant's conviction is affirmed.