UNITED STATES of America,

v.

Lee MALONE.

Crim. No. 92–667.

United States District Court,
E.D. Pennsylvania.

June 1, 1993.

Richard W. Berlinger, Abington, PA, for appellant.

Eric Sitarchuk, Asst. U.S. Atty., Philadelphia, PA, for U.S.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Defendant, Lee Malone, was charged with open lewdness in violation of 18 Pa.C.S.A. § 5901 (1992),[1] and disorderly conduct in violation of 36 C.F.R. § 2.34(a)(2) (1992). Magistrate Judge Arnold C. Rapoport found Mr. Malone guilty on both charges after a bench trial. Malone appeals pursuant to 18 U.S.C. § 3402 and Federal Rule of Criminal Procedure 58(g). For the reasons stated below, I will reverse both convictions.

*Factual Background*

Viewing the evidence in the light most favorable to the government, the following occurred. On the afternoon of July 29, 1992, Mr. Malone entered the Betzwood picnic area of Valley Forge National Park. He approached Michael Hetrick, a law enforcement officer who was working undercover in this area to find "anything out of the ordinary, including sexual activity." (Notes of Testimony from November 12, 1992, hearing

---

1. The Assimilative Crimes Act, 18 U.S.C. § 13 (Supp.1988), directs that a crime which is punishable in the state surrounding federal property, "although not made punishable by any enactment of Congress," shall be prosecuted in federal court pursuant to the relevant state law.

("N.T.") at 18.) Malone asked Hetrick if he wanted to take a walk. Hetrick agreed, and the two walked "about 10 or 15 yards across the railroad grade to ... just above the corner of the picnic area." (N.T. 11.) At this point the men were "about five yards off of the road grade" and approximately 50 to 75 yards from the picnic tables (id.).

According to Hetrick, Malone then began to "rub his genitalia through his shorts" for "a couple of minutes." (N.T. 12.) Malone moved closer to Hetrick until he was touching Hetrick's hand, which prompted Hetrick to pull away. (N.T. 13.) Hetrick then "walked a short distance up a trail.... approximately another 20 yards from the railroad grade," (N.T. 13–14), and Malone followed. Once in that area, Malone asked Hetrick "general questions about what type of sexual activity I enjoyed, and he began to rub my chest in a circular motion." (N.T. 14–15.) Hetrick told Malone he was nervous and headed back to the railroad grade. When Malone followed, Hetrick signalled his backup officer who arrested Malone.

*Analysis*

### 1. Disorderly Conduct

The government agreed at oral argument that Malone's conviction for disorderly conduct should be vacated. The pertinent regulation defines disorderly conduct as the commission of one of four prohibited acts "with intent to cause public alarm, nuisance, jeopardy or violence." 36 C.F.R. § 2.34. Knowing or reckless creation of the risk of these results is also actionable. *Id.*

■ The government is correct to concede the impropriety of that conviction, quite apart from its concerns about double jeopardy. Clearly, the evidence does not demonstrate either that Malone intended to cause or knowingly or recklessly risked causing public alarm, nuisance, jeopardy, or violence. The magistrate judge seems to have accepted the position suggested by the government at oral argument, that any "gesture, or ... display or act that is obscene" constitutes

disorderly conduct. *See* 36 C.F.R. § 2.34(a)(2).[2] However, it is clear from the regulation that such an act is only disorderly conduct if it is intended to disturb the public or if the defendant's reckless acts create a risk of public disturbance. Here, the public was not involved at all. For this reason as well as the government's concession, I will vacate Malone's disorderly conduct conviction.

### 2. Open Lewdness

■ As a matter of law, the learned magistrate judge also erred in finding the government had met its burden under 18 Pa. C.S.A. § 5901 (1992). That statute states:

A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed.

It is one element of the government's burden of proof, therefore, to show Malone *knew* his lewd act—rubbing his genitalia through his shorts and touching Hetrick's hand—was likely to be observed by others who would be affronted or alarmed.

■ "Others," as used in the statute, has two possible meanings. The first is Officer Hetrick. Counsel for Malone argued at trial that Hetrick could not have been affronted or alarmed because he was working undercover with precisely the purpose of soliciting propositions like Malone's. The magistrate judge rejected this argument, saying: "It would prohibit anyone who was working in an undercover capacity, and who's seen this kind of activity, from ever being an effective law enforcement officer for th[e] reason that he would—under your argument, [ ] never be affronted." (N.T. 54.) I think both the argument and the response miss the mark. The point is not whether Hetrick was or could have been alarmed, but whether Malone *knew* that Hetrick was likely to be alarmed. According to Hetrick's own testimony, Malone saw Hetrick standing alone

**2.** Actually, the magistrate judge said he was convicting Malone of disorderly conduct on the basis of *Com. v. Williams,* 394 Pa.Super. 90, 574 A.2d 1161 (1990), a case which involved the prohibited act of "creat[ing] a hazardous or physically offensive condition," rather than of using an obscene gesture. (N.T. 55.) I think there is even less evidence that Malone created a hazardous or physically offensive condition than that he used an obscene gesture, but in either case the behavior must be accompanied by *intent.*

wearing an "I love Betzwood" button in the Betzwood picnic area known for sexual propositions among strangers. (*See Times Herald* article, exhibit D–1.) Hetrick agreed to walk with Malone away from the picnic area and he engaged Malone in conversation.[3] When Malone did start rubbing his groin, Hetrick watched for several *minutes*, he claims, without indicating alarm. There was nothing from either the surroundings, the conversation, or the walk together to a more secluded area which shows Malone knew Hetrick was likely to be affronted or alarmed.[4]

The other visitors in the park are the second possibility for "others" who may have been affronted or alarmed by Malone's actions. The government argued at trial that even if Hetrick was not likely to be alarmed, a jogger or biker passing by the railroad grade or the picnic area certainly would have been. Again, however, the statute requires that Malone *knew* he was committing a lewd act in the likely sight of people who would be affronted or alarmed. The evidence does not demonstrate that he knew this. Rather, the evidence shows that Malone invited Hetrick to walk a good distance from the picnic area to a "normally wooded" (as opposed to "heavily wooded") area. This area was several yards from the railroad grade, was accessible only by a narrow foot path, and was shielded from the main trail by trees. (N.T. 21–22.) Then, by the time Malone "rubbed [Hetrick's] chest in a circular motion," the men were another 20 yards from the open space. There was no testimony that anyone else did see them or was likely to see them. Every detail even of Hetrick's story suggests Malone was looking for privacy, not for public display.[5]

In the absence of any showing that Malone knew he was likely to be seen by bystanders (who we can assume would be affronted), *or* that Malone knew that Hetrick, having accompanied him off the trail talking about sex,

*would* be affronted, it was error to convict Malone of open lewdness.

An order follows.

## ORDER

AND NOW, this 1st day of June, 1993, it is hereby ordered that the judgment of the magistrate judge filed November 23, 1992, convicting defendant of open lewdness and disorderly conduct, is reversed and the defendant is discharged.

---

3. According to Malone, Hetrick repeatedly asked him, "What are you looking for?" and said, "With me the sky's the limit." (N.T. 39.)

4. The statute does not say "should have known," but the government did not even prove Malone *should* have known Hetrick would be affronted, given Hetrick's behavior.

5. Before the magistrate judge ruled this testimony in error, Hetrick opined that Malone followed him back to the railroad grade because "he believed I wanted to go to some place more secluded." (N.T. 15.) While I realize this testimony is technically stricken, I note the statement shows that even Hetrick knew Malone was not intending his lewdness to be "open."