**UNITED STATES of America**

v.

**Gary P. MATHER.**

**UNITED STATES of America**

v.

**Gregory B. LINN.**

**Crim. Nos. 95–782–M–1, 95–783–M–1.**

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1995.

pursuant to 28 U.S.C. § 1927. Because we decline jurisdiction over these actions, we will not

Robert A. Zauzmer, U.S. Attorney's Office, Philadelphia, PA, for Government.

Richard W. Berlinger, Abington, PA, for defendants.

*MEMORANDUM*

DALZELL, District Judge.

Gary P. Mather and Gregory B. Linn appeal their convictions for open lewdness and disorderly conduct in a national park. The Government has, since the filing of their notices of appeal, withdrawn the open lewdness charges, and thus, although we shall affirm the disorderly conduct convictions, we shall remand for resentencing.

I.  *Factual Background*

On June 13, 1995, at about 5:30 p.m.,

examine the merits of these requests and therefore deny them.

Ranger Duane Buck[1] was on foot patrol in the picnic area of Valley Forge National Historical Park when he observed a male, wearing a white dress shirt and brown slacks, walk from the upper to the lower section of Varnum's Woods, just off the parking lot, and continue east along a foot path. August 2, 1995 Notes of Testimony of hearing before Magistrate Judge Charles B. Smith ("N.T.") at 3. Knowing that people had previously engaged in open sex in that area of the park, Ranger Buck remained where he was. *Id.* Two minutes later, another male, also in a white dress shirt and slacks, followed the first man down the foot path. *Id.* The Ranger followed the men from a distance until the men left the trail after about 150 yards. *Id.* at 4.

Reaching the end of the footpath, Ranger Buck momentarily lost sight of the men, until he detected them about fifteen yards ahead of him inside the tree line. *Id.* The two men, later identified as appellants Gary P. Mather and Gregory B. Linn, were standing with their trousers down, masturbating in front of one another. *Id.* The Ranger testified that he observed Linn then perform fellatio on Mather.[2] *Id.* After about two minutes, Ranger Buck ordered the men to come out of the woods, at which point they quickly dressed and began to walk away. *Id.* Ranger Buck ordered the men to halt, but they continued to flee. *Id.* The Ranger pursued them and they eventually stopped. Ranger Buck then led them from the woods into an open field. *Id.*

After Ranger Buck called for assistance, Mather agitatedly asked him, "Why don't you go harass some straight people?" and remarked to Linn that the Ranger was out to get his "quota". *Id.* at 5. Ranger Buck handcuffed the appellants to one another, escorted them to the parking lot and placed them in the back seat of a squad car. *Id.* Ranger Buck arrested the appellants for disorderly conduct in violation of 36 C.F.R. § 2.34(a)(2)[3] and open lewdness in violation of 18 Pa. Cons.Stat.Ann. § 5901.[4] *Id.* Mather was also charged with interference with agency function in violation of 36 C.F.R. § 2.32(a)(1).[5] *Id.*

On August 2, 1995, the appellants were convicted of disorderly conduct and open lewdness at a bench hearing before United States Magistrate Judge Charles B. Smith. *Id.* at 8. Magistrate Judge Smith fined the appellants $400 each, and imposed a one-year term of probation, a condition of which was

1. Ranger Buck has figured in similar cases before. *See United States v. Bender and Todd*, Nos. 93–885–M–1 and 93–886–M–1 (E.D.Pa.1994) (non-jury trial) and *United States v. Chung Lee*, No. 91–226, 1991 WL 193422, 1991 U.S.Dist. LEXIS 13265 (E.D.Pa.1991).

2. The appellants dispute that they engaged in oral sex. N.T. at 7. However, under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), and *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir.1995), when an appellant challenges the sufficiency of the evidence presented against him at trial, we must then view all of that evidence in a light most favorable to the Government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

On the other hand, when an appellant challenges an interpretation of specified statutory language, our standard of review is plenary. We review the Magistrate Judge's evidentiary rulings for an abuse of discretion only. *United States v. Hayden*, 64 F.3d 126, 129 (3d Cir.1995).

Although the appellants cite *Jackson*, Appellants' brief at 2, 6, they appear to argue as a matter of law that their actions are not criminal under the applicable statute, *id.* at 3–4. Because

appellants challenge only a single item of evidence (*i.e.*, Ranger Buck's testimony that he saw Linn perform fellatio on Mather), and do not challenge equally damning evidence (*i.e.*, Ranger Buck's testimony that appellants were masturbating in public), this dispute is immaterial to our decision.

3. The Secretary of the Interior is empowered to enact regulations "necessary or proper for the use and management of the" National Park Service, which includes Valley Forge National Historical Park. 16 U.S.C.A. § 3 (1992).

4. The appellants were charged with a crime defined by the Commonwealth of Pennsylvania because the Assimilative Crimes Act, 18 U.S.C.A. § 13(a) (Supp.1995), states that any person who is guilty of an act punishable in the state surrounding federal property, "although not made punishable by any enactment of Congress," shall be prosecuted in federal court pursuant to the relevant state law. *United States v. Sharpnack*, 355 U.S. 286, 287, 78 S.Ct. 291, 292, 2 L.Ed.2d 282 (1958).

5. The Government withdrew this charge at the hearing. N.T. at 6.

that both must stay out of Valley Forge National Historical Park. *Id.* at 8. Mather and Linn filed timely appeals. Fed. R.Crim.P. 58(g)(2)(B); Fed.R.App.P. 4(b). On appeal, the Government has, as noted, withdrawn the open lewdness charges. Govt. Brief at 1.

## II. *Legal Analysis*

Magistrate Judge Smith had jurisdiction at the August 2 hearing pursuant to 28 U.S.C.A. § 3401(a) (1985). We have jurisdiction over this appeal pursuant to 18 U.S.C.A. § 3402 (Supp.1995). Our review of a Magistrate Judge's findings is the same as the review the Court of Appeals conducts over a District Court decision. Fed.R.Crim.P. 58(g)(2)(D); *United States v. Jenkins,* No. 91–147, 1991 WL 101423, 1991 U.S.Dist. LEXIS 7809 (E.D.Pa.1991).

The regulation governing disorderly conduct, 36 C.F.R. § 2.34(a)(2) (1995), provides, in pertinent part:

> (a) A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:
>
> .     .     .     .     .
>
> (2) Uses language, an utterance, a gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to

inflict injury or incite an immediate breach of the peace.

Surprisingly, this regulation has drawn little attention from the federal courts, receiving mention in only five opinions, two of which being unpublished decisions of the Ninth Circuit and said by that Circuit to have no precedential value.[6] Nevertheless, the regulation is sufficiently plain on its face that we shall apply the ordinary meaning of its terms. *See, e.g., Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992).

The Government impliedly acknowledges that appellants did not have any actual intent to cause public alarm, nuisance, jeopardy or violence. Govt.Brief at 3 ("... the government concedes that Mather and Linn made an effort to conceal themselves in the woods...."). Therefore, the appellants' convictions can stand only if Mather and Linn "knowingly or recklessly creat[ed] *a risk*" of "public alarm, nuisance, jeopardy or violence" by engaging "in a display or act that is obscene", 36 C.F.R. § 2.34(a)(2) (emphasis added).

It seems clear that masturbation in a public park is obscene under both the standard in *Miller v. California,* 413 U.S. 15 (1973)[7], and Pennsylvania law.[8] *See, e.g., United States v. Schein,* 31 F.3d 135, 136 (3d Cir. 1994) (affirming appellant's conviction for mailing materials "contain[ing] graphic depictions of urination, masturbation, and oral and anal sex among homosexual males", con-

---

**6.** *See* disclaimers pursuant to Ninth Circuit Rule 36–3, cited at the headings of *United States v. McGuire,* 968 F.2d 1222, 1992 WL 149856, (9th Cir.1992) (conviction affirmed); *United States v. Dearing,* 872 F.2d 431, 1989 WL 37216, 1989 U.S.App. LEXIS 5017 (9th Cir.1989) (conviction affirmed). *See also United States v. Malone,* 822 F.Supp. 1187 (E.D.Pa.1993); *United States v. Chung Lee,* No. 91–226, 1991 WL 193422, 1991 U.S.Dist. LEXIS 13265 (E.D.Pa.1991); and *United States v. Lanen,* 716 F.Supp. 208 (D.Md.1989).

**7.** "The *Miller* test for obscenity asks whether the work, taken as a whole, 'appeals to the prurient interest,' 'depicts or describes [sexual conduct] in a patently offensive way,' and 'lacks serious literary, artistic, political, or scientific value.' *Miller,* 413 U.S., at 24", 93 S.Ct. at 2615. *United States v. X–Citement Video, Inc.,* ––– U.S. –––, ––– n. 4, 115 S.Ct. 464, 470 n. 4, 130 L.Ed.2d 372 (1994).

**8.** Obviously derived from *Miller,* the Pennsylvania statute defines "obscene" as:

> Any material or performance, if:
> (1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;
> (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and
> (3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

18 Pa. Cons.Stat.Ann. § 5903(b) (Purdon's Supp. 1995) (obscene and other sexual materials and performances). The definition of sexual conduct therein specifically includes "oral sodomy" and "patently offensive representations or descriptions of masturbation". *Id.*

sidered "obscene" under the *Miller* test); *Commonwealth v. Greenich,* 420 Pa.Super. 551, 554, 617 A.2d 323, 324 (1992) (affirming obscenity convictions for display of magazines depicting "sadomasochistic behavior, bondage, homosexuality and males ejaculating"), *allocatur denied,* 533 Pa. 656, 625 A.2d 1191, *cert. denied,* —— U.S. ——, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976) (open lewdness statute could be constitutionally applied to defendant who masturbated in his car in a parking lot in plain view of members of public). The only issue remaining is whether appellants recklessly created a risk of public alarm.

The appellants rely upon *United States v. Malone,* 822 F.Supp. 1187 (E.D.Pa.1993) and *United States v. Bender and Todd,* Nos. 93–885–M–1 and 93–886–M–1 (E.D.Pa.1994) (non-jury trial) in urging us to overturn their convictions. In *Malone,* the appellant approached an undercover law enforcement agent in Valley Forge National Historical Park and asked the agent if he wanted to take a walk. 822 F.Supp. at 1187–88. The men walked to an area fifty to seventy yards from the picnic tables where the appellant began to rub his genitalia through his shorts. *Id.* at 1188. The appellant moved closer to the agent until he touched the agent's hand, when the agent walked away. *Id.* The appellant followed, asked the agent what type of sexual activity he preferred, and rubbed the agent's chest. *Id.* The agent walked away and signalled his backup officer who arrested the appellant. *Id.* A Magistrate

Judge convicted the defendant of disorderly conduct. *Id.*

On appeal before Senior Judge Ditter, the Government conceded at oral argument that the appellant's disorderly conduct conviction should be vacated. *Id.* Judge Ditter wrote:

> However, it is clear from the regulation that such an act is only disorderly conduct if it is intended to disturb the public or if the defendant's reckless acts create a risk of public disturbance. Here, the public was not involved at all. For this reason as well as the government's concession, I will vacate Malone's disorderly conduct conviction.

*Id.*

In *United States v. Bender and Todd,* Nos. 93–885–M–1 and 93–886–M–1 (E.D.Pa.1994), Senior Judge Fullam held a bench trial[9] on defendants' charges of disorderly conduct and open lewdness. The ubiquitous Ranger Buck testified that he was walking along the picnic area of Varnum's Woods when he saw the defendants hugging and kissing in the woods approximately ten to fifteen yards away from him. February 14, 1994 Notes of Testimony of non-jury trial before Senior Judge John P. Fullam ("*Bender* N.T.") at 8. Bender was facing and Todd had his back to Ranger Buck. *Id.* Todd then performed fellatio on Bender. *Id.* Ranger Buck arrested the defendants for disorderly conduct and open lewdness. *Id.* at 9. At trial, Judge Fullam acquitted the defendants of both charges. *Id.* at 24.[10]

---

9. Bender and Todd refused to consent to trial before a Magistrate Judge.

10. Judge Fullam reasoned as follows:

> ... I think the problem with this case is specific charges which were brought and the specific requirements in order to support those charges.
>
> The open lewdness statute states that the crime is committed if a person "does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed."
>
> The disorderly conduct statute requires that the person act with intent to cause public alarm, nuisance, jeopardy, or violence or knowingly or recklessly creating a risk thereof.
>
> It seems to me it is obvious neither of these two individuals committed a lewd act knowing it would be observed or likely to be observed.

> Number two, they certainly were not intending to create a public disturbance. They were trying to be as private as they could.
>
> So that as to the only charges involved in this case I have no choice but to find them not guilty.
>
>   *  *  *  *  *  *
>
> There would certainly be nothing improper with a Park regulation which made it an offense to have any kind of sexual activity anywhere in the Park.
>
> I think a lot of us would agree that is what the law should say. But I am stuck with what the charges are here. You can't convict them of these crimes simply because they might have been guilty of some Park regulation which has not been charged.
>
> The Defendants are discharged.

*Bender* N.T. at 23–25.

While we agree with appellants that this case bears some similarities, especially to *Bender and Todd*, because we focus on the recklessness of appellants' acts and the public nature of a park, we shall affirm appellants' convictions.

There are, to be sure, different formulations of the term "reckless". For the most part, the common law disregarded any difference between the terms "recklessness" and "criminal negligence". *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 849 (3d ed. 1982). More recently, the trend has been to differentiate the terms, with "recklessness" involving a subjective sense of awareness on the part of the actor of the unjustifiable danger inherent in his conduct. *Id.* at 850–51; Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law* § 30, at 215 (1972); Joshua Dressler, *Understanding Criminal Law* § 10.04, at 104 (1987). The Model Penal Code states that

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

American Law Institute, Model Penal Code § 2.02(2)(c) (1962). Last year, the Supreme Court had occasion to mention the distinctions between the criminal and civil law of the term "reckless".[11]

We hold that appellants were, even on a subjective standard, aware that their actions could cause public alarm, and thus acted recklessly. Mather testified at the hearing that "[t]he only thing that I would—that I would have to say is that even though my actions were inappropriate for the area", he had no intent to be seen. N.T. at 7. Mather later added: "Mr. Linn and I made a very, very—even though our actions, as I said, were inappropriate—we made a very, very conscious effort not to be seen." *Id.* at 8. It is this very effort that demonstrates appellants' subjective awareness of the risk of public alarm that they created. Mather and Linn knew that their actions would cause public alarm if they were seen, yet they proceeded nonetheless, thus presenting a classic instance of reckless behavior under any definition. The Park Service's regulation does not require that an individual know to a metaphysical certainty that his conduct will cause a certain result; it merely requires that an actor disregard the *risk* that the result will occur.[12]

Furthermore, a national park is the quintessential public place. As the Supreme Court noted long ago about parks in general, "parks ... have immemorially been held in trust for the use of the public", *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). With respect to national parks in particular, Congress has declared that the National Park Service represents a collection of "superlative natural, historic, and recreation areas in every major region of the United States" to be dedicated to the "benefit and inspiration of all the people of the United States". 16 U.S.C.A. § 1a–1 (1992). Congress acquired the land in Valley Forge National Historical

**11.** In the context of a § 1983 case alleging "deliberate indifference", the Supreme Court observed that "The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. See Prosser and Keeton § 34, pp. 213–214; Restatement (Second) of Torts § 500 (1965). The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware. See R. Perkins & R. Boyce, Criminal Law 850–851 (3d ed. 1982); J. Hall, General Principles of Criminal

Law 115–116, 120, 128 (2d ed. 1960) (hereinafter Hall); American Law Institute, Model Penal Code § 2.02(2)(c), and Comment 3 (1985); but see *Commonwealth v. Pierce*, 138 Mass. 165, 175–178 (1884) (Holmes, J.) (adopting an objective approach to criminal recklessness)."

*Farmer v. Brennan*, —— U.S. ——, —— ———, 114 S.Ct. 1970, 1978–79, 128 L.Ed.2d 811 (1994).

**12.** It is because Judge Fullam focused exclusively on the "intent", rather than the "reckless" aspect of the regulation, that we respectfully decline to follow *Bender and Todd*.

Park "to preserve and commemorate for the people of the United States the area associated with the heroic suffering, hardship, and determination and resolve of General George Washington's Continental Army during the winter of 1777–1778 at Valley Forge". 16 U.S.C.A § 410aa (1992).

As Magistrate Judge Smith mentioned to appellants at the hearing, the National Park Service expends significant public funds in its efforts to attract visitors, including countless children, to national parks. N.T. at 7. Those visitors explore wherever they please in this Park, and should be able to do so without concern of happening upon an open sex act. As demonstrated by their behavior, these appellants clearly knew that the public would accept Congress's invitation to wander about the Park, but proceeded nevertheless.

This case is therefore more compelling than *United States v. Lanen,* 716 F.Supp. 208 (D.Md.1989), where the appellant was convicted of disorderly conduct after he was seen masturbating in the stall of a restroom in a park, where arguably one might expect considerably more privacy. We thus respectfully part company with the view of our colleague, Judge Ditter, that when people engage in sexual activities outdoors in a public park, "the public [i]s not involved at all." *Malone,* 822 F.Supp. at 1188. While we agree with our colleague that some places in the Park are less visible or open than others, this distinction cannot change the legal and practical reality that every square inch of the Park's grounds is public, and thus Park grounds cannot supply a venue for sex akin to the privacy of a room.

III. *Conclusion*

Because we find that appellants engaged in an obscene act that recklessly created a risk of public alarm, we shall affirm their convictions for disorderly conduct. We shall also reverse the appellants' convictions for open lewdness in light of the Government's concession as to this charge.