UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4547

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

JOE L. LANNING,

                Defendant - Appellant.

-------------------------

AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL
LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION,
INCORPORATED,

                Amici Supporting Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.  Martin K. Reidinger,
District Judge.  (1:10-cr-00047-MR-1)

Argued:  January 31, 2013          Decided:  July 19, 2013

Before DUNCAN, WYNN, and FLOYD, Circuit Judges.

Reversed and remanded by published opinion.  Judge Wynn wrote
the majority opinion, in which Judge Floyd joined.  Judge Duncan
wrote a dissenting opinion.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH
CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Amy

Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Henderson Hill, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee. Joshua A. Block, Leslie Cooper, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York; Christopher Brook, ACLU OF NORTH CAROLINA LEGAL FOUNDATION, Raleigh, North Carolina, for Amici Supporting Appellant.

---

WYNN, Circuit Judge:

In the context of a sting operation specifically targeting gay men, an undercover ranger approached Defendant, initiated a sexually suggestive conversation with him, and then expressly agreed to have sex with him. In response, Defendant backed up to the ranger and "[v]ery briefly" touched the ranger's fully-clothed crotch. J.A. 56. That conduct gave rise to Defendant's conviction for disorderly conduct under 36 C.F.R. § 2.34, which prohibits conduct that is "obscene," "physically threatening or menacing," or "likely to inflict injury or incite an immediate breach of the peace." 36 C.F.R. § 2.34(a)(2).

Upon review, we hold that the term "obscene" is unconstitutionally vague as applied to Defendant. We further hold that no rational trier of fact could find beyond a reasonable doubt that Defendant's brief touch of the ranger's crotch, done in response to the ranger's deliberate attempt to convince Defendant that he would have sex with him, was "physically threatening or menacing" or "likely to inflict injury or incite an immediate breach of the peace." Accordingly, we reverse and remand for a judgment of acquittal.

I.

After receiving complaints about male-on-male sexual activity around the Sleepy Gap Overlook of the Blue Ridge

3

Parkway in Buncombe County, North Carolina, the National Park Service and the United States Forest Service conducted a joint operation "designed to enable officers to identify and arrest men who were using the area for sexual solicitation and activity with other men." Appellee's Br. at 3. Joseph Darling, a thirty-three-year-old, two-hundred-pound park ranger, participated in the sting operation as an undercover officer. In November 2009, in the course of the sting operation, Darling saw Defendant, a sixty-two-year-old male retiree, on a nearby trail. As Darling walked past Defendant, Defendant grabbed his own groin and kept walking. Darling said hello and also kept walking.

Five or ten minutes later, after walking around in the woods and talking to a few other people, Darling went looking for Defendant and found him standing by himself on an unofficial trail. Darling engaged Defendant in a casual conversation about the weather for several minutes. Darling then commented that Asheville was "an open community," accepting of a homosexual lifestyle. J.A. 54. Defendant responded that he "wanted to be F'ed." Id. Darling replied "okay or yes, or something to that affirmative[,]" J.A. 58, and "gave [Defendant] every reason to

4

believe that [Darling] was good to go[,]" J.A. 85.[1] At that point, Defendant-who was facing Darling and standing approximately three to five feet away from him-turned around, took one or two steps backward towards Darling, and, with his left hand, reached back and "[v]ery briefly" touched Darling's fully-clothed crotch. J.A 56. Darling described the touch as "a fairly firm grasp" that lasted "[v]ery briefly[,] [u]ntil I could get the words out: 'Police officer, you're under arrest.'" Id.

Defendant was charged with disorderly conduct in violation of 36 C.F.R. § 2.34(a)(2). Before trial, Defendant unsuccessfully moved to dismiss the case. At trial, Darling was the only witness. And at the close of the government's evidence, Defendant moved for judgment of acquittal. This, too, the magistrate judge denied. The magistrate judge then found Defendant guilty of disorderly conduct, giving no specific reasons for his decision and noting only that he was "convinced beyond a reasonable doubt" that Defendant had violated the statute. J.A. 121. The magistrate judge sentenced Defendant to

---

[1] Upon the district court's request for a clarification, Darling affirmed that "good to go" meant that he "gave [Defendant] every reason to believe that [Darling] would have been willing to have undertaken in the conduct that [Defendant] proposed[,]" i.e., "anal intercourse." J.A. 85-86.

15 days' imprisonment, a $1000 fine, and a two-year ban on visiting government forests and parks.

Defendant appealed to the district court. The district court affirmed Defendant's conviction, concluding that there was sufficient evidence that his conduct was obscene and physically threatening and/or menacing. The district court, however, vacated and remanded Defendant's sentence because the magistrate judge lacked the authority to ban Defendant from government parks. The magistrate judge resentenced Defendant to 15 days' imprisonment and a $500 fine, and the district court affirmed. Defendant then appealed to this Court.

## II.

On appeal, Defendant first argues that the government's evidence was insufficient to support his conviction for disorderly conduct under Section 2.34(a)(2). We must construe the evidence and any inferences therefrom in the light most favorable to the government and affirm if "*any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir.), cert. denied, 132 S. Ct. 564 (2011). Further, Defendant and the government disagree as to the meaning of Section 2.34(a)(2); that, we review de

novo.  United States v. Abuagla, 336 F.3d 277, 278 (4th Cir. 2003).

Section 2.34 is an enactment of the Secretary of the Interior, who is authorized to promulgate regulations "necessary or proper for the use and management" of parks under the jurisdiction of the National Park Service, including the Blue Ridge Parkway.  16 U.S.C. § 3.  Section 2.34 is just such a regulation and therefore has "the force and effect of law." United States v. Fox, 60 F.3d 181, 184 (4th Cir. 1995).

At Defendant's bench trial, the magistrate judge found Defendant guilty of violating Section 2.34(a)(2), which says:

> A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person . . . [u]ses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

36 C.F.R. § 2.34(a)(2).  Accordingly, the essential elements of disorderly conduct under Section 2.34(a)(2) are: (1) using language, an utterance, or a gesture, or engaging in a display or act; (2) that is obscene, physically threatening or menacing, or done in a manner likely to inflict injury or incite an immediate breach of the peace; and (3) having the intent to cause or knowingly or recklessly creating a risk of public alarm, nuisance, jeopardy, or violence.

7

A.

Defendant argues that the government failed to prove the second element of disorderly conduct under Section 2.34(a)(2). We therefore must analyze each prong of that element—that is, whether the conduct at issue was "obscene," "physically threatening or menacing," or "likely to inflict injury or incite an immediate breach of the peace"—to determine whether the government met its burden.

Regarding the "obscene" prong, Defendant contends that the definition of obscenity that the Supreme Court laid out in Miller v. California, 413 U.S. 15 (1973), governs here and that, under Miller, his "conduct was not obscene." Appellant's Br. at 15. In Miller, the Supreme Court laid out several factors to consider when determining whether "materials" and "works" are obscene: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Id. at 24 (emphasis added, citations omitted).

Defendant implicitly recognizes that the Supreme Court framed the Miller test with an eye to speech and expressive

8

conduct, as indeed he must, given the Supreme Court's use of words like "work" and "materials." Id. at 23-24. Defendant nevertheless posits that applying the Miller definition of obscenity to "expressive conduct" while applying a "different definition[]" to "non-expressive conduct" would be "bizarre." Reply Br. at 3-4. Yet a close reading of Miller reveals that the Supreme Court intended just that.

In Miller, the Supreme Court expressly distinguished obscene depictions from obscene conduct. Specifically, the Court stated in a footnote that

> [a]lthough we are not presented here with the problem of regulating lewd public conduct itself, the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior. In United States v. O'Brien, 391 U.S. 367, 377, 88 S. Ct. 1673, 1679, 20 L. Ed. 2d 672 (1968), a case not dealing with obscenity, the Court held a State regulation of conduct which itself embodied both speech and nonspeech elements to be 'sufficiently justified if . . . it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.' See California v. LaRue, 409 U.S. 109, 117—118, 93 S. Ct. 390, 396—397, 34 L.Ed.2d 342 (1972).

Id. at 26 n.8 (emphasis added). This distinction makes sense, given the Court's focus on the "inherent dangers of undertaking to regulate any form of expression"—i.e., First Amendment concerns. Id. at 23 (emphasis added). Yet we can also easily imagine dangers inherent in prohibiting government regulation of

9

public sexual conduct unless that conduct rises to the Miller standard of "prurient" and "'hard core,'" as Defendant suggests. Id. at 24-27.

Undeterred, Defendant points to United States v. Mather, 902 F. Supp. 560 (E.D. Pa. 1995), to demonstrate that at least one federal court has applied the Miller obscenity test to public sexual conduct. Notably, Mather is an out-of-circuit district court opinion of no precedential value here. Further, the Mather court looked not simply to the federal disorderly conduct regulation also in play here, but also to a Pennsylvania obscenity statute. Id. at 562. And, as the Mather court noted, the Pennsylvania statute's language tracked the Miller test almost verbatim:

> Obviously derived from Miller, the Pennsylvania statute defines "obscene" as:
> Any material or performance, if:
> (1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;
> (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and
> (3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

Id. at 563 n.8 (citation omitted). Yet Mather failed to engage in any analysis whatsoever as to why the Miller test similarly applies to Section 2.34(a)(2). Id.

10

Moving away from Miller and back to the regulation itself, the provision's legislative history reveals that the rule's promulgator believed "[t]he harms that the regulation seeks to avoid [to be] commonly understood." 48 Fed. Reg. 30252, 30270 (June 30, 1983) (emphasis added). Similarly, in United States v. Coutchavlis, the Ninth Circuit declared that "the regulation contained only 'common words,' easily understandable by 'people of ordinary intelligence.' The words of § 2.34 are not so obscure that they require any special skill to interpret." 260 F.3d 1149, 1155 (9th Cir. 2001) (citation omitted).[2]

We regularly turn to the dictionary for the "ordinary, contemporary, common meaning" of words undefined by statute, as is the case with "obscene" here. United States v. Lehman, 225 F.3d 426, 428 (4th Cir. 2000) (quotation marks omitted). The American Heritage Dictionary defines "obscene" as "[o]ffensive to accepted standards of decency" and "[m]orally repulsive[.]" Id. at 1216 (5th ed. 2011). The Oxford English Dictionary defines "obscene" as "[o]ffensively or grossly indecent, lewd[.]" Oxford English Dictionary Online,

---

[2] Coutchavlis did not specifically address Section 2.34(a)(2)'s "obscene" prong. Rather, the Ninth Circuit analyzed only Section 2.34(a)'s "physically threatening or menacing" and "public alarm or nuisance" language. 260 F.3d 1149.

http://www.oed.com/view/Entry/129823?redirectedFrom=obscene

(last visited April 10, 2013).

The government argues that "the standard dictionary definition" of obscene "appl[ies] in determining whether a defendant is guilty of 'disorderly conduct'" and, when doing so here, "the evidence amply supports the magistrate judge's finding that Defendant's conduct was obscene." Appellee's Br. at 19. Defendant counters that if a dictionary definition of obscene applies, then Section 2.34(a)(2) is "unconstitutionally vague as applied." Reply Br. at 15. Under the circumstances of this case, we must agree with Defendant.

It is axiomatic that a law fails to meet the dictates of the Due Process Clause "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." City of Chicago v. Morales, 527 U.S. 41, 56 (1999) (quotation marks omitted). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). As the Supreme Court has noted, "perhaps the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a

12

legislature establish minimal guidelines to govern law enforcement." Smith v. Goguen, 415 U.S. 566, 574 (1974).

Turning first to the notice issue, we agree with Defendant that Section 2.34(a)(2) would not have provided him, or anyone of ordinary intelligence, fair warning that the complained-of conduct was obscene. The evidence, even when viewed in the light most favorable to the government, shows that: Defendant grabbed his own clothed groin once while walking; after being engaged in a flirtatious conversation by an undercover ranger who noted that "Asheville [was] an open community," J.A. 54, Defendant told the undercover ranger that "he wanted to be F'ed[,]" id.; and, after the ranger accepted Defendant's sexual proposition, Defendant quickly walked backwards toward the ranger and grabbed the ranger's clothed crotch "fairly firm[ly] . . . [v]ery briefly[,] [u]ntil [the ranger] could get the words out: 'Police officer, you're under arrest.'" J.A. 56. Under these circumstances, we cannot conclude that anyone "of ordinary intelligence," Hill, 530 U.S. at 732, would understand that such conduct is "[m]orally repulsive," The American Heritage Dictionary at 1216, or "[o]ffensively or grossly indecent,

13

lewd[,]" Oxford English Dictionary Online, so as to be "obscene" and thus proscribed by Section 2.34(a)(2).[3]

Further, the facts of this case illustrate the real risk that the provision may be "arbitrar[ily] and discriminator[ily] enforce[d]." Hill, 530 U.S. at 732. The sting operation that resulted in Defendant's arrest was aimed not generally at sexual activity in the Blue Ridge Parkway; rather, it specifically targeted gay men. Perhaps not surprisingly, then, the all-male undercover rangers arrested only men on the basis of disorderly homosexual conduct.

The impetus for the sting operation: citizen complaints. Darling testified that "the public was concerned" about "male on

---

[3] Perhaps recognizing its weak hand, the government suggests that "the magistrate judge could reasonably infer from Defendant's conduct that he, in fact, intended to have sexual intercourse in the very location in which he backed into Ranger Darling and grabbed Ranger Darling's [clothed] genitals." Appellee's Br. at 20 n.1 (emphasis added). Yet Defendant's conviction was for disorderly conduct—not disorderly thoughts or desires. And it is undisputed that Defendant's actual conduct never went further than his backing up to Darling and very briefly grabbing Darling's clothed crotch. Moreover, even Darling agreed that, "for all [he] knew, [Defendant] could have very well intended for [the intercourse] to happen at [Defendant's] house." J.A. 88. And such private sexual conduct would, of course, have been perfectly legal. As the Supreme Court pronounced a decade ago, "[l]iberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct" and "allows homosexual persons the right to" engage in consensual intimate conduct in the privacy of their homes. Lawrence v. Texas, 539 U.S. 558, 567 (2003).

14

male [sexual] activity in that area that was targeted."[4]  J.A. 46, 92.  Darling testified that every single one of the citizen complaints had been about homosexuals.  Id.

It may be that gay men engage more frequently in sexual activity in the Blue Ridge Parkway and therefore generate more citizen complaints.  Yet it is also entirely plausible that the public in and around the Blue Ridge Parkway subjectively finds homosexual conduct, even relatively innocuous conduct such as that at issue here, particularly "morally repulsive," The American Heritage Dictionary 1216, and "grossly indecent," Oxford English Dictionary Online, and therefore complains.  If the public is, by contrast, not similarly troubled by a woman propositioning her boyfriend for sex and then briefly touching his clothed crotch, there would exist no citizen complaint and no related sting, even for otherwise identical heterosexual conduct.  Simply enforcing the disorderly conduct regulation on the basis of citizen complaints therefore presents a real threat of anti-gay discrimination.  See Hill, 530 U.S. at 732; cf. Smith, 415 U.S. at 578 ("The language at issue is void for

---

[4] One wonders why a sting operation was implemented in the first place.  If instead the rangers had, for example, hidden themselves, monitored the area, and arrested individuals who engaged in public sexual conduct, many of the questionable aspects of this case, from the discriminatory targeting to the alleged inchoate conduct the government attempts to inject into this matter, see supra note 3, would almost surely fall away.

15

vagueness as applied to Goguen because it subjected him to criminal liability under a standard so indefinite that police, court, and jury were free to react to nothing more than their own preferences . . . .").

To be sure, in concluding that Section 2.34(a)(2)'s "obscene" is unconstitutionally vague as applied to Defendant, we do not mean to suggest that the statute is impermissibly vague per se. As the Supreme Court has recognized, "there are statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." Smith, 415 U.S. at 577-78.

Section 2.34(a)(2) may be just such a law. For example, while we take issue with the Mather court's analysis, as discussed above, we have no doubt that the court correctly held that the conduct at issue there—i.e., two individuals with their pants down, masturbating in front of one another and engaging in fellatio in a national park—was obscene and disorderly under Section 2.34(a)(2). 902 F. Supp. 560. Unquestionably, it was; and were that conduct before us, this would surely be a radically different opinion.

The conduct at issue here, however, is of a qualitatively different, significantly more benign nature. We do not believe that a reasonable defendant would know that by engaging in such

16

conduct under the circumstances of this case, he would be subjecting himself to criminal liability. That, coupled with our serious concern regarding discriminatory enforcement, leads us to conclude that Section 2.34(a)(2) is unconstitutionally vague as applied and that the "obscene" prong of the regulation therefore cannot serve as a basis for Defendant's conviction.[5]

---

[5] We acknowledge that this Circuit upheld a conviction for similar conduct in United States v. Glenn, 562 F.2d 324 (4th Cir. 1977). Notably, however, that case concerned a different, repealed, regulation—36 C.F.R. § 50.26(f)—which barred "obscene or indecent act[s.]" Further, the defendant in Glenn had his conviction upheld specifically on the basis of the term "indecent," which the Supreme Court has made plain is a more innocuous concept than "obscene." Cf., e.g., Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989). Glenn therefore neither controls nor illuminates the meaning or application of "obscene" here.

We also acknowledge the dissenting opinion's assertion that we fail to "accord[] the level of deference to the magistrate judge's findings of fact required by our standard of review." Post at 27. But that assertion misses the mark as to the regulation's obscenity prong, because even where a rational trier of fact could find facts sufficient to support a conviction, a statute can still be unconstitutional because it "authorizes or even encourages arbitrary and discriminatory enforcement." Hill, 530 U.S. at 732. Indeed, the sufficiency of the evidence seems irrelevant to such a constitutional analysis. See, e.g., Smith, 415 U.S. 566, 575 (striking as unconstitutional a statute criminalizing contemptuous treatment of the flag where the defendant was convicted by a jury for wearing a flag on the seat of his jeans, noting that the statute "allows policemen, prosecutors, and juries to pursue their personal predilections[,]" and nowhere factoring into that analysis whether or not a rational trier of fact could have found facts sufficient to support a conviction).

17

B.

Turning to the next prong of the regulation's second element, we analyze whether Defendant's conduct was "physically threatening or menacing."  36 C.F.R. § 2.34(a)(2).

Even the government concedes that an objective reasonable person standard applies to this inquiry.  See Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971); United States v. Shrader, 675 F.3d 300, 311 (4th Cir.), cert. denied, 133 S. Ct. 757 (2012), reh'g denied, 133 S. Ct. 1320 (2013) (noting that statutes have been "disapproved" where they "merely set out the subjective effects of conduct and imposed penalties for causing that injury" and citing Coates).  Stated differently, a fact finder must focus not on whether a particular victim subjectively felt physically threatened or menaced, but instead must ask whether a reasonable person objectively would have felt so under the circumstances of the case.

Under the regulation's plain language, a defendant engages in disorderly conduct when he "engages in a display or act that is . . . physically threatening or menacing . . . ."  36 C.F.R. § 2.34(a)(2).  Again, the rule's promulgator believed "[t]he harms that the regulation seeks to avoid [to be] commonly understood[.]"  48 Fed. Reg. at 30270.  And the Ninth Circuit agreed that "the regulation contained only 'common words,'

18

easily understandable by 'people of ordinary intelligence.'" Coutchavlis, 260 F.3d at 1155.

The American Heritage Dictionary defines "physical" as "[o]f or relating to the body." Id. at 1331. It defines "threaten" as "express[ing] a threat against or giv[ing] indications of taking hostile action against[.]" Id. at 1813. It defines "menacing" as "constitut[ing] a threat to; endanger[ing.]" Id. at 1098. And the dictionary is an appropriate aid to understanding the "ordinary, contemporary, common meaning" of words undefined by statute. Lehman, 225 F.3d at 428.

Moving on to the facts of this case, Darling, a fit, thirty-three-year-old, two-hundred-pound ranger, approached Defendant, a sixty-two-year-old retiree, and initiated flirtatious conversation. Defendant then told Darling that he "wanted to be F'ed," to which Darling expressly consented. J.A. 54. Only after Darling agreed to Defendant's sexual proposition and "gave [Defendant] every reason to believe that" Darling was "good to go," J.A. 85, did Defendant quickly back up to Darling and very briefly touch Darling's clothed crotch, whereupon Darling arrested him. And although Darling testified that Defendant's touch was "firm," the government presented no

19

evidence that Darling experienced any pain or suffered any injury as a consequence.[6]

Darling testified that he felt "shocked" and "caught . . . off guard" by Defendant's touch. J.A. 57. But the disorderly conduct regulation requires "physically threatening or menacing" conduct, not merely surprising conduct. 36 C.F.R. § 2.34(a)(2). And even if surprise were sufficient to trigger the regulation (it is not), and even if Darling's subjective reaction were relevant to our inquiry (it is not), it defies logic that Darling was shocked by Defendant's touch when it was, in fact, precisely what Darling had been "string[ing Defendant] along" to do—"to cross a certain line." J.A. 84-85.

Facts matter. Had Defendant and Darling engaged in flirtatious conversation that did not involve an agreement to have sex, a reasonable person might well have felt physically threatened or menaced by Defendant's "[v]ery briefly" touching Darling's clothed crotch. Likewise, had Defendant pinned Darling down and attempted to remove Darling's clothing, a reasonable person, even one who had consented to sex, might well

---

[6] If Defendant had pained or injured Darling, Defendant may well have been charged with, for example, assault, and not simply disorderly conduct.

20

have felt physically threatened or menaced by that conduct.[7]  But given the totality of the circumstances actually before us, even when viewing the evidence in the light most favorable to the government, no rational fact finder could conclude that a reasonable person would feel physically threatened or menaced by Defendant's conduct.  See Penniegraft, 641 F.3d at 571.

C.

Because neither Section 2.34(a)(2)'s "obscene" prong nor its "physically threatening or menacing" prong can serve as a basis for Defendant's conviction, we turn to the third and final prong of the regulation's second element: conduct "done in a manner that is likely to inflict injury or incite an immediate breach of the peace."  36 C.F.R. § 2.34(a)(2).  Defendant argues that the government failed to introduce sufficient evidence to support his conviction for disorderly conduct "done in a manner

---

[7] Defendant argued that "the person to whom [sexual] advances are directed would have to do something to convey a lack of consent" and that "it is implied consent unless they do something to convey to the other person that they are no longer consenting."  Oral Argument at 2:40, available at http://www.ca4.uscourts.gov/OAaudiotop.htm.  We find this position troubling and note that initiation of sexual activity does not deprive a person of the right to withdraw consent.  See, e.g., In re John Z., 60 P.3d 183, 184 (Cal. 2003) (deeming intercourse after withdrawal of consent rape).  Nevertheless, this is not a case implicating withdrawal of consent.  Rather, this matter arises out of a sting operation, the whole point of which was to "get [Defendant] . . . to cross a certain line." J.A. 84-85.  And "to get [Defendant] where [he] need[ed] to get him, [Darling] ha[d] to string him along."  J.A. 85.

21

that is likely to inflict injury or incite an immediate breach of the peace." We agree.

The promulgating agency, in discussing these "commonly understood" terms, described the conduct covered by this prong as "actions that . . . constitute 'fighting words'—those that result in a 'clear and present danger' of violence or physical harm." 48 Fed. Reg. at 30270. In United States v. Poocha, the Ninth Circuit noted that the regulation's language "closely tracks . . . Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L.Ed. 1031 (1942), in which the Court described the type of language that may be legally proscribed by the government—specifically classes of speech 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" 259 F.3d 1077, 1080 (9th Cir. 2001) (citing with approval United States v. Chung Lee, 1991 WL 193422, at *2 (E.D. Pa. Sept. 20, 1991), and noting that the Lee court stated: "The statute is designed to prohibit speech that incites violence, or 'presents a clear and present danger'. . . . This statute covers what are known as 'fighting words' and 'incitement to riot.'").

Applying the law to the circumstances of this case, even when viewing the evidence in the light most favorable to the government, we fail to see how any rational finder of fact could deem Defendant's conduct "fighting words," 48 Fed. Reg. at

22

30270, or anything else "likely," 36 C.F.R. § 2.34(a)(2) (emphasis added), to result in a "'clear and present danger' of violence" or "riot." Poocha, 259 F.3d at 1080. To reiterate, Darling approached Defendant and initiated flirtatious conversation. Defendant then told Darling that he "wanted to be F'ed," to which Darling expressly consented. J.A. 54. Only after Darling agreed to Defendant's proposition did Defendant back up to Darling and briefly touch Darling's clothed crotch, whereupon Darling arrested him.

Indeed, Darling had just agreed to have sex with Defendant and given Defendant "every reason to believe that" Darling was "good to go." J.A. 85. No rational trier of fact could thus conclude that Darling himself likely would react violently to Defendant's fleeting touch. Further, if one were to take Darling's real identity, i.e., that of an undercover ranger, into account, the government's burden would be even greater, "'because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Poocha, 259 F.3d at 1081. And as to the broader public, were anyone else to have witnessed the conduct at issue here—and there is no evidence to that effect—they may well have had no idea what had transpired, given the fact that the encounter was, in Darling's own words, "[v]ery brief[,]" and

23

that Darling himself "wasn't sure what was happening." J.A. 56. Even if other park visitors had witnessed the incident and recognized it for what it was, we fail to see how a rational fact finder could decide that the "[v]ery brief" touching over clothes at issue here would likely cause those visitors to react violently or to riot.

D.

Before concluding, we point to a recent Sixth Circuit decision, Alman v. Reed, which we find insightful, even if distinguishable. 703 F.3d 887 (6th Cir. 2013). In Alman, law enforcement arrested a gay man during an undercover sting at a Michigan park. Id. at 891. The Alman sting, too, resulted from complaints of sexual activity in the park. Id. at 892. There as here, an undercover officer approached Alman and initiated conversation. Id. While the two men engaged in apparently flirtatious conversation, unlike in this case, the undercover officer never expressly agreed to engage in anal intercourse, or anything else for that matter. Nevertheless, "Alman leaned forward and reached out and touched the zipper area on the front of [the undercover officer's] crotch." Id. at 893. The undercover officer backed away and soon thereafter "pulled out his badge and told Alman that he was under arrest." Id. Alman was charged with being a disorderly person, battery, soliciting

24

and accosting, and criminal sexual conduct in the fourth degree. Id. at 894. Ultimately, all of the charges were dismissed.[8]

Alman (along with his partner and a gay rights organization) brought a Section 1983 suit alleging that law enforcement violated his constitutional rights. Id. at 895. The district court dismissed the case, but the Sixth Circuit resuscitated it, expressly holding that law enforcement, as a matter of law, lacked probable cause as to each offense with which Alman had been charged. Id. at 900. The Sixth Circuit held that "there is nothing in the record describing circumstances that would be sufficient to create a reasonable fear of dangerous consequences." Id. at 897. The Court expressly refused to make "assumptions about Alman's intentions that the record does not substantiate" and noted that "a reasonable officer would have needed more evidence of Alman's intentions before concluding that he was inviting [the undercover officer] to do a public lewd act." Id. at 899 (quotation marks omitted). Under the circumstances, the Sixth

---

[8] Interestingly, the pertinent county prosecutor had an official policy that "'[a]n unsolicited sexual act or exposure to a member of the public or an undercover police officer will bring a misdemeanor charge of indecent exposure pursuant to MCL 750.335a or disorderly person-obscene conduct pursuant to MCL 750.167(f). Charges will not be pursued by this office if the officer's conduct was designed to make the individual believe the act was invited or consensual.'" Id. at 894.

Circuit concluded that "no reasonable officer" would have thought that Alman committed, or was about to commit, any of the crimes with which he was charged. Id. at 899-900.

## III.

Under the circumstances of this case, no rational fact finder could have concluded beyond a reasonable doubt that Defendant engaged in conduct that was physically threatening or menacing or likely to inflict injury or incite an immediate breach of the peace. See 36 C.F.R. § 2.34(a)(2). Further, applying a common definition of "obscene" to this case renders Section 2.34(a)(2)'s obscenity prong unconstitutionally vague as applied to Defendant. We therefore reverse Defendant's conviction and remand this matter for entry of a judgment of acquittal.[9]

REVERSED AND REMANDED

---

[9] Defendant made additional, alternative arguments as to why his conviction should be overturned. Because the arguments addressed already result in reversal, we need not, and therefore do not, engage those alternative arguments.

26

DUNCAN, Circuit Judge, dissenting:

I respect the thoughtfulness of the majority opinion and share its distaste for Officer Darling's conduct. I also appreciate the narrowness of its focus and its careful tethering to the specific facts before us. However, the concern that prompts my brief dissent is that I am unable to agree that the majority opinion accords the level of deference to the magistrate judge's findings of fact required by our standard of review. I believe that a rational trier of fact could have found a physical touching such as this implying an immediate intent to engage in sexual activity in public both obscene and physically threatening or menacing within the meaning of 36 C.F.R. § 2.34(a)(2).