**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Zula JONES, Defendant–Appellee.**

No. 01–10352.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 2002.

Filed April 18, 2002.

---

J. Douglas Wilson, Assistant United States Attorney, San Francisco, CA, for the appellant.

John W. Keker and Steven A. Hirsch, Keker & Van Nest, San Francisco, CA, for the appellee.

Before SNEED, BRUNETTI and T.G. NELSON, Circuit Judges.

## OPINION

BRUNETTI, Circuit Judge.

In this appeal, we consider whether the government's efforts to ensure compliance with a forthwith subpoena fall under the *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), exception to the warrant requirement. We conclude that the search does not fall within the *O'Connor* exception and that the government's efforts gave rise to an illegal search.

I

In 1999, the federal government conducted an investigation into possible criminal wrongdoing in the San Francisco Human Rights Commission's ("HRC") program for certifying minority ownership of businesses that bid on public contracts. On June 25, 1999, the U.S. Attorney's office served a grand jury subpoena on the City Attorney's office seeking records from the HRC by August 12, 1999. On Friday, July 30, 1999, federal investigators received information from a source within the HRC that documents responsive to the subpoena were being shredded. Federal prosecutors prepared a "forthwith" grand jury subpoena for those records, as well as shredded records. That afternoon several FBI agents, Assistant United States Attorney Thomas Carlucci ("Carlucci"), Deputy City Attorney Loretta Giorgi ("Giorgi"), and two investigators from the City Attorney's Office arrived at the HRC offices and served the subpoena on HRC Director Marivic Bamba ("Bamba").

HRC Director Bamba informed the agents that the HRC was still in the process of gathering all the documents requested in the original subpoena. In the meantime, other federal prosecutors asked the City Attorney for permission to have

the investigators determine if the HRC was fully complying with the subpoena and to conduct a search of the records at the HRC offices. The City Attorney agreed and authorized the search under the supervision of the City Attorney. Federal agents had HRC records custodian, Carla Vaughn ("Vaughn"), and HRC employee Toni Delgado ("Delgado"), walk the agents through the HRC offices and point out areas where responsive documents may have been located. If Vaughn indicated that an employee worked on any of the matters listed on the subpoena, the agents searched that employee's work area. The agents also unlocked offices to determine whether they contained shredders.

Jones' office was not identified as containing any documents responsive to the subpoena. However, Vaughn was asked to unlock the door to determine whether a shredder was inside Jones' office. Documents were found on the floor of Jones' office that were relevant to the subpoena. After the agents asked Giorgi for permission, they opened Jones' file cabinet and retrieved more documents. They also obtained a sample of shredded material from the shredder in Jones' office.

Federal investigators subsequently secured the building and no employees were allowed to enter the HRC offices over the weekend. On Monday morning, August 12, 1999, HRC employees were asked to gather in a conference room. The employees were given a copy of the subpoena and told to search their offices for responsive documents. Federal agents followed the employees back to their offices and watched while the employees searched for the documents.

Jones arrived that morning and asked to speak with HRC director Bamba. She looked at the subpoena, told officers to speak with her attorney if they had any questions, and left the offices. The next morning, Jones returned to the HRC of-fices and an FBI agent asked Jones for her consent to search her office. Jones signed the consent form but she wrote on the form that she did not consent to the search of certain boxes of documents.

Jones moved to suppress the evidence taken from her office on Friday, July 30 and Tuesday, August 3. She argued that the officers' entry into her office on Friday, July 30, violated the Fourth Amendment. In addition, she claimed that her consent to the search of her office on Tuesday was tainted by the previous allegedly illegal search.

On March 27, 2001, the district court ruled that the Friday night search violated the Fourth Amendment because it "was not initiated by the employer for purposes of conducting the business of the employer or for the purposes of investigating internal employee misconduct." On May 9, 2001, after further briefing, the court granted the motion to suppress in an oral ruling. The court acknowledged that in some instances an employer may search an employee's office. However, the court held that the "City Attorney does not under the case law have the authority, as an employer, to grant consent to search offices of the nature of Ms. Jones'." The court explained that if "the business of the employer includes complying with subpoenas, then it would be appropriate to conduct a search at the employer's discretion to comply with the subpoena." Yet, the court found that this was not the case here. The City as an employer was not searching for employment-related reasons, but "rather simply to allow another agency [the FBI] to conduct a search."

In addition, the court ruled that although Jones' consent was "voluntary and not coerced," it was the fruit of the agents' illegal activity. The court noted that on Monday morning Jones and other HRC employees were prevented from entering

their offices until they had been instructed on compliance with the subpoena. Such action by law enforcement agents constituted a seizure because "the employees were not free to simply go about their business and ... the only way that they would have access to their office is with an FBI escort." The continuous law enforcement presence in the HRC office tainted Jones' consent.

 The United States now appeals the district court's decision. We review de novo a motion to suppress. *United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir. 2000). We review a trial court's determination that a person voluntarily consented to a search under a clearly erroneous standard. *United States v. Albrektsen*, 151 F.3d 951, 953 (9th Cir.1998). We review the trial court's factual findings for clear error. *United States v. Mattarolo*, 209 F.3d 1153, 1155–56 (9th Cir.2000).

### II

 Under *O'Connor v. Ortega*, 480 U.S. 709, 717, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), a public employee has a reasonable expectation of privacy in her workplace office. However, such an expectation may be unreasonable if the "intrusion is by a supervisor rather than a law enforcement official." *Id.* The Court held that a warrantless search of an employee's office by a public employer for work-related, non-investigatory reasons or pursuant to an investigation of work-related employee misconduct, was not subject to review under the probable cause standard, but rather the less rigorous standard of "reasonableness under all the circumstances." *Id.* at 725–26, 107 S.Ct. 1492.

The Court's less heightened standard of review for public employer searches has its origins in the "realities of the workplace" that frequently require employers "to enter the offices and desks of their employees for legitimate work-related reasons wholly unrelated to illegal conduct" in order to "complete the government agency's work in a prompt and efficient manner." *Id.* at 721, 107 S.Ct. 1492. Thus, a work-related search requires no warrant.

The government argues that the search conducted at the HRC's office was an ordinary, work-related file retrieval case under the *O'Connor* exception to the warrant requirement. The government argues that the City Attorney, acting as the employer in this case, consented to the actions taken by the federal investigators. We are unpersuaded.

 The record supports the district court's holding that the Friday night search did not fall within the *O'Connor* exception to the warrant requirement. First, the search was not initiated or conducted by Jones' employer, the HRC. Although the government attempts to argue that under the City Charter, the City itself was the employer and that, therefore, the City Attorney could consent to the search as the employer, the record does not support this conclusion. The HRC, while technically a part of the City government, is a separate agency with its own authority and director. The HRC could have refused to cooperate with the investigation. Furthermore, the Charter does not state that the City Attorney has the power to step in and act as the employer. Such a construction would mean that any City official could override Fourth Amendment protections.

In addition, although the federal agents received permission from the City Attorney to conduct the Friday night searches, the district court found that there was no evidence that the City Attorney was "in charge of making the decisions here" or that she stood "in the shoes of the employer." The court noted that Deputy City Attorney Giorgi did not herself decide to go into the HRC and look for the docu-

ments until the FBI and U.S. Attorneys' office asked if they could go in and look. The search was initiated at the request of law enforcement officials and was conducted by the federal government. Assistant United States Attorney Carlucci stated that it was the U.S. Attorney's office's idea to conduct a "compliance check." HRC director Bamba states in her declaration that she was "not asked to authorize the FBI, the United States Attorney or the City Attorney to conduct a broad search of the HRC offices. Neither was [she] asked to authorize these persons to conduct a search of the HRC offices to determine whether all of the documents that the HRC possessed that were responsive to the subpoena had been produced."

Second, the search was not conducted by the HRC in order to find a file or report necessary to carry out the agency's work. The search was carried out by federal agents to ensure that HRC employees were not violating the subpoena and destroying potential evidence necessary in a criminal investigation. The Supreme Court in *O'Connor* emphasized that there is a difference between a work-related search and a search conducted to investigate the violation of criminal laws:

> While police, and even administrative enforcement personnel, conduct searches for the primary purpose of obtaining evidence for use in criminal or other enforcement proceedings, employers most frequently need to enter the offices and desks of their employees for legitimate work-related reasons wholly unrelated to the illegal conduct.

*Id.* at 721, 107 S.Ct. 1492; *See also id.* at 722, 107 S.Ct. 1492 ("In contrast to other circumstances in which we have required warrants, supervisors in offices … are hardly in the business of investigating the violation of criminal laws."); *Id.* at n* (stating that the court will "not address the appropriate standard when an employ-ee is being investigated for criminal misconduct.…").

The government's position that the search was an ordinary file retrieval case, regardless of the fact that it was conducted in order to comply with a subpoena in a criminal investigation, is not supported by caselaw. In *United States v. Taketa*, 923 F.2d 665, 675 (9th Cir.1991), we held that a public employer "cannot cloak itself in its public employer robes in order to avoid the probable cause requirement when it is acquiring evidence for a criminal prosecution."

In *Taketa*, the DEA conducted a search of the DEA office at the McCarran International Airport in Las Vegas, Nevada in response to a fellow DEA agent's complaint that Agent Taketa was misusing a pen register. This initial search was not subject to the Fourth Amendment warrant requirement but was governed by *O'Connor*'s reasonableness standard. The search was conducted by the employer, the DEA, as part of an "internal investigation directed at uncovering work-related employee misconduct." *Id.* at 674.

During the search, DEA agents placed video surveillance equipment in the office to monitor whether the pen register was being misused. We stated that the video surveillance was not part of the investigation into employee misconduct, but rather, "a search for evidence of criminal conduct." *Id.* at 675. We held that when the DEA "switched roles from public employer to criminal investigator, the investigation changed and the standard of reasonableness imposed on the search changed with it. No longer could the DEA rely on *O'Connor*." *Id.* The *O'Connor* standard is not applicable to federal agents engaged in a criminal investigation. *Id.*

The government's argument that retrieving official documents responsive to a subpoena is simply a "work-related"

search is belied by the actions taken by the federal investigators. The immediate goal of the FBI was to secure documents relevant to a criminal investigation that could be admissible in subsequent criminal prosecutions. The federal investigators were involved at every step of the search. Federal investigators initiated the search of the HRC offices. The agents directed the search and had HRC employees point out offices and work areas relevant to the subpoena which they then proceeded to search.

Additionally, the FBI secured the building over the weekend and did not allow HRC employees access to their offices. The extensive involvement of the federal agents did not make the search of Jones' office a routine file retrieval case under *O'Connor*. *See Ferguson v. City of Charleston*, 532 U.S. 67, 84, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (holding that the extensive involvement of law enforcement officials at every stage of the drug testing policy administered by the hospital did not allow the policy to fall within the "special needs" doctrine which has been used to uphold suspicionless searches performed for reasons unrelated to law enforcement).

### III

The government also appeals the district court's finding that the Friday night search of Jones' office tainted the consent that Jones provided on Tuesday and that evidence seized pursuant to the Tuesday search is not admissible at trial.

We review for clear error the district court's determination of whether Jones voluntarily consented to a search. *United States v. Albrektsen*, 151 F.3d 951, 953 (9th Cir.1998).

In order for the evidence seized during the search of Jones' office on Tuesday to be admissible, the government must establish that the consent was voluntary for purposes of the Fifth Amendment and that

the prior illegal entry did not taint the subsequent consent for purposes of the Fourth Amendment. *United States v. Furrow*, 229 F.3d 805, 813 (9th Cir.2000), *rev'd on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir.2001).

The district court did not err in finding that Jones voluntarily consented to the search of her office on Tuesday. The factors considered in determining the voluntariness of the search are: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1989). In this case, Jones was not in custody, no weapons were drawn, Jones was notified she did not have to consent, and Jones only consented to a partial search of her office.

Once a determination has been made that the consent for the search was voluntary for purposes of the Fifth Amendment, it is necessary to decide if the evidence is subject to exclusion under the Fourth Amendment as the fruit of the prior unconstitutional entry. *United States v. George*, 883 F.2d 1407, 1415 (9th Cir.1989) (stating that for purposes of the Fourth Amendment, a finding that a consent was voluntarily made "only satisfies a threshold requirement"). A court must determine if the consent is "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *George*, 883 F.2d at 1416. "Dissipation of the taint resulting from an illegal entry ordinarily involves showing that there was some significant intervening time, space, or event." *United States v. Buchanan*, 904 F.2d 349, 356 (6th Cir.1990).

The government argues that sufficient time elapsed between the search on Friday night and Jones' consent on Tuesday. The government notes that while the federal agents may have seized the offices, they did not seize Jones, Jones had ample opportunity to consider her actions when she left the HRC offices on Monday and to consult a lawyer, and that she gave agents a qualified consent.

The district court held that, while the issue of whether the prior illegal entry tainted Jones' consent was close, the government had the burden to establish that the consent was an act of free will under the totality of the circumstances. The government failed to do so. We find no evidence that the district court clearly erred in reaching its decision.

We have held that an illegal entry can taint subsequent consent if the "illegality is so connected to the subsequent consent so as to render the consent ineffective." *Furrow*, 229 F.3d at 814. "In such a case, a person might reasonably think that refusing to consent to a search of his home when he knows that the police have, in fact, already conducted a search of his home, would be a bit like closing the barn door after the horse is out." *Id.*

In this case, the federal investigators seized the HRC offices beginning on Friday. No employees were allowed into the HRC offices over the weekend. In addition, on Monday morning employees were escorted into a conference room, told about the subpoena, and then escorted to their desks by FBI agents who watched over them while they searched their desks. Jones was aware of this seizure and of the search of her office on Friday night when she showed up at the HRC offices on Monday morning.

It is true that Jones chose not to participate in the collection of documents, told the federal investigators to contact her attorney if they had questions, and then proceeded to leave. The district court recognized that these facts weighed in favor of the government. However, as the district court notes, Jones could not access her office on Monday morning if she did not cooperate in the gathering of responsive documents. Furthermore, when Jones showed up to work at the HRC offices on Tuesday, the same federal investigators were present outside her door. Jones was not unaware of the search of her office on Friday night, and the fact that the federal investigators might have already seen incriminating evidence. Jones was not "in the same posture for considering whether to consent to a search as a person not previously subject to an illegal entry." *Furrow*, 229 F.3d at 814. The district court weighed all of the evidence and reached a conclusion that is supported by the record. The court did not clearly err in finding that Jones' consent was tainted.

**AFFIRMED.**