34

**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Nina S. MANNING, Defendant—
Appellant.**

**No. 08–10102.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 19, 2008.

Filed Feb. 4, 2009.

Loretta Sheehan, Assistant U.S., USH–
Office of the U.S. Attorney, Honolulu, HI,
for Plaintiff–Appellee.

Richard S. Kawana, Esquire, Honolulu,
HI, for Defendant–Appellant.

Before: SCHROEDER, PAEZ and
N.R. SMITH, Circuit Judges.

MEMORANDUM *

Nina Manning appeals the district
court's denial of her motion to suppress
statements that she made to Naval Crimi-
nal Investigative Service ("NCIS") agents
in connection with the unlawful killing of
her infant daughter "J.M." Manning also

---

* This disposition is not appropriate for publica-
tion and is not precedent except as provided    by 9th Cir. R. 36–3.

appeals the district court's denial of her motion to suppress evidence that was obtained during a search to which she consented verbally and in writing. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's denial of a motion to suppress. *See United States v. Decoud,* 456 F.3d 996, 1007 (9th Cir.2006). We review the district court's findings of fact for clear error. *See United States v. Howard,* 447 F.3d 1257, 1262 n. 4 (9th Cir.2006). We affirm.

The district court held an evidentiary hearing to consider Manning's Motion to Suppress. After such a hearing, a district court's findings of fact may only be reversed upon a "definite and firm conviction that a mistake has been committed." *See Easley v. Cromartie,* 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (articulating the clear error standard of review); *Lentini v. California Ctr. for the Arts, Escondido,* 370 F.3d 837, 843 (9th Cir. 2004) (same). We find no clear error in the district court's findings of fact.

■ The district court properly applied the law to its findings of fact and found that Manning was not in custody when she confessed to killing J.M. In order to determine whether an individual is in custody, we must first consider "the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Pertinent factors include "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim,* 292

F.3d 969, 974 (9th Cir.2002) (citations omitted).

Considering these factors, a reasonable person in Manning's situation would have felt free to terminate the interview and leave. The language used to summon Manning was not indicative of someone in custody. Manning voluntarily accompanied the agents to NCIS offices after a professional and non-threatening summons and her refusal of the invitation by the officers to let her drive separately. While Manning may have been confronted with evidence of her guilt, this is not the case where the agents repeatedly called her a liar, confronted her with misleading evidence, and pressed her for the truth. *See United States v. Beraun–Panez,* 812 F.2d 578, 580 (9th Cir.1987). The agents instead discussed various "red flags" that they found in the prior investigation and, based on her response to that discussion, shared how their experiences with children differed with Manning's account. The district court found that the officers treated Manning professionally and courteously and did not press her for the truth at any time. According to the district court's findings, the physical surroundings of the interrogation do not suggest that the agents exercised their dominion over Manning. She was questioned in an 18 by 25 foot comfortable appearing office with upholstered furniture and a large window. The door to this room was only closed upon receiving her permission. The length of the detention does not indicate a finding of custody. While Manning was questioned for over four hours, she made her first confession 70 minutes into the interview and was given numerous breaks throughout the interview. Manning was also told that she was free to leave throughout the interview and would be taken home. Finally, almost no pressure was applied to detain Manning. Manning was not threatened, restrained, or subject

to any physical or psychological pressure during the interview. Therefore, considering the totality of circumstances surrounding the interview as found by the district court, a reasonable person in Manning's position would have felt free to terminate the interview and leave at any time. The district court did not err in concluding that Manning was not in custody. *See Thompson,* 516 U.S. at 112, 116 S.Ct. 457.

■ The district properly applied the law to its findings of fact and found that Manning's confession was voluntary. A statement is involuntary if, in the totality of the circumstances, a suspect's will was overborne by law enforcement. *Haynes v. State of Wash.,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). There is no evidence in the record to suggest that the NCIS agents obtained the statements by the use of any physical or psychological coercion or by improper inducement so that Manning's will was overborne. Therefore, Manning's confession was voluntary. *See United States v. Coutchavlis,* 260 F.3d 1149, 1158 (9th Cir.2001).

■ The district court also properly applied the law to its findings of facts and found that Manning's consent to search her residence was given voluntarily. To determine whether consent to a search was given voluntarily, we look at the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Pertinent factors include: "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *United States v. Jones,* 286 F.3d 1146, 1152 (9th Cir.2002) (citing *United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir.1989)). At the time Manning consented to the search (1) she was not in custody, (2) the officers did not have their guns drawn, (3) Miranda warnings were not necessary because she was not in custody, (4) she was notified and understood that she had a right to refuse, and (5) she was not told that a search warrant could be obtained. Therefore, the consent to search her house was voluntarily given. *See id.*

**AFFIRMED.**

PAEZ, J., dissenting:

I respectfully dissent, because, in my view, when Nina Manning made her self-incriminating statements, she was in custody and was not informed of her *Miranda* rights before she made those incriminating statements. We review de novo the ultimate question of whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112–13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *United States v. Kim,* 292 F.3d 969, 973 (9th Cir.2002). Applying this standard of review, I would hold that the district court erred in determining that Manning was not in custody.

I agree with the majority that Manning was not in custody when she first encountered the agents at her home and when they drove her to the NCIS offices. However, "[i]f an individual voluntarily comes to the police station or another location and, once there, the circumstances become such that a reasonable person would not feel free to leave, the interrogation can become custodial." *Kim,* 292 F.3d at 975. Although Manning may have voluntarily agreed to accompany the agents to the NCIS offices, the interview soon evolved into a custodial interrogation when the agents confronted her with the pathology report regarding her daughter's death.

As the majority notes, we must consider the totality of the circumstances in determining whether a person is in custody for purposes of *Miranda. See id.* at 974. Although there are certain facts that suggest that Manning was not in custody at the time of the interview—the language used to summon her, the physical surroundings of the interview, and the non-threatening manner of the agents—the majority discounts the import of the duration of the interview and the way in which the agents confronted Manning with the evidence of her guilt. *See id.* In my view, these factors, on balance, require a determination that Manning was in custody for purposes of *Miranda.*

Not including the time it took to memorialize her confession, Manning was interviewed at NCIS headquarters for approximately 3.5 hours. Although the majority states that it is not unprecedented for a court to determine that such a lengthy interview is non-custodial, it relies solely on out-of-circuit cases. Our case law suggests just the opposite. Indeed, of the relevant Ninth Circuit cases cited by the parties, no case holding that a defendant was not in custody for purposes of *Miranda* involved an interview that even approached the 3.5–hour interview at issue in this case. *See United States v. Norris,* 428 F.3d 907, 912–13 (9th Cir.2005) (45–minute interview was non-custodial); *United States v. Hudgens,* 798 F.2d 1234, 1237 (9th Cir.1986) (same). Moreover, Manning's interview greatly exceeds the length of interviews that we have determined were custodial, in the totality of the circumstances. *See United States v. Kim,* 292 F.3d 969, 977 (9th Cir.2002) (50–minute interview was custodial); *United States v. Wauneka,* 770 F.2d 1434, 1439 (9th Cir. 1985) (interview that lasted over an hour was custodial); *United States v. Lee,* 699 F.2d 466, 467–68 (9th Cir.1982) (60–90 minute interview was custodial). The duration of Manning's interview, therefore, weighs heavily in favor of a determination that Manning was in custody when she made her incriminating statements.

The manner in which the agents confronted Manning with evidence of her guilt and—contrary to the majority's view—pressed her to tell the truth is also consistent with a custodial interrogation. At the beginning of the interview, the agents immediately confronted her with the results of the pathology report, stating that the pathologists "felt" that Manning's child died from asphyxiation. ER 53. The agents then discussed "red flags" with Manning. These "flags" included an affair Manning had prior to her pregnancy, her husband's dispute of the child's paternity, and the fact that Manning was alone with her children at the time of the child's death because her husband was deployed; all of these circumstances likely would have indicated to a reasonable person in Manning's situation that she was considered a suspect in the investigation of her child's death. ER 155. Further, the agents repeatedly "shared" their personal parenting experiences with Manning in a way that would have suggested to Manning that they believed she was lying, and explicitly told her that they believed that she was not being truthful. ER 157, 159. In fact, Manning finally confessed that she smothered her child just after the agents suggested, for the third time, that Manning's story ran counter to their own parenting experiences. ER 165.

Under this type of pressure for such a long period of time, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. at 112, 116 S.Ct. 457. Because Manning was in custody, the agents should have advised her of her *Miranda* rights before interro-

gating her.[1] As a result, the trial court, in my view, erred in concluding that Manning was not in custody for purposes of *Miranda* and denying Manning's motion to suppress her self-incriminating statements. I would therefore reverse and remand for further proceedings.

---

1. My differences with the majority's custody analysis also bear on whether Manning's consent to search her home was voluntary. In making such a determination, we must look at "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir.2002) (citing *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1989)). In light of my conclusion that the custody determination should be reversed, I would vacate the district court's ruling that Manning's consent to search her house was voluntary. Because I would hold that Manning was in custody and therefore entitled to *Miranda* warnings—two factors that suggest that her consent was not voluntary—I would instruct the district court to reconsider anew on remand its ruling on the voluntariness of Manning's consent.