PAEZ, J.,
dissenting:
I respectfully dissent, because, in my view, when Nina Manning made her self-incriminating statements, she was in custody and was not informed of her Miranda rights before she made those incriminating-statements. We review de novo the ultimate question of whether “a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.” Thompson v. Keohane, 516 U.S. 99, 112-13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); United States v. Kim, 292 F.3d 969, 973 (9th Cir.2002). Applying this standard of review, I would hold that the district court erred in determining that Manning was not in custody.
I agree with the majority that Manning was not in custody when she first encountered the agents at her home and when they drove her to the NCIS offices. However, “[i]f an individual voluntarily comes to the police station or another location and, once there, the circumstances become such that a reasonable person would not feel free to leave, the interrogation can become custodial.” Kim, 292 F.3d at 975. Although Manning may have voluntarily agreed to accompany the agents to the NCIS offices, the interview soon evolved into a custodial interrogation when the agents confronted her with the pathology report regarding her daughter’s death.
*37 As the majority notes, we must consider the totality of the circumstances in determining whether a person is in custody for purposes of Miranda. See id. at 974. Although there are certain facts that suggest that Manning was not in custody at the time of the interview — the language used to summon her, the physical surroundings of the interview, and the non-threatening manner of the agents — the majority discounts the import of the duration of the interview and the way in which the agents, confronted Manning with the evidence of her guilt. See id. In my view, these factors, on balance, require a determination that Manning was in custody for purposes of Miranda.
Not including the time it took to memorialize her confession, Manning was interviewed at NCIS headquarters for approximately 3.5 hours. Although the majority states that it is not unprecedented for a court to determine that such a lengthy interview is non-custodial, it relies solely on out-of-circuit cases. Our case law suggests just the opposite. Indeed, of the relevant Ninth Circuit cases cited by the parties, no case holding that a defendant. was not in custody for purposes of Miranda involved an interview that even approached the 3.5-hour interview at issue in this case. See United States v. Norris, 428 F.3d 907, 912-13 (9th Cir.2005) (44 minute interview was non-custodial); United States v. Hudgens, 798 F.2d 1234, 1237 (9th Cir.1986) (same). Moreover, Manning’s interview greatly exceeds the length of interviews that we have determined were custodial, in the totality of the circumstances. See United States v. Kim, 292 F.3d 969, 977 (9th Cir.2002) (50-minute interview was custodial); United States v. Wauneka, 770 F.2d 1434, 1439 (9th Cir.1985) (interview that lasted over an hour was custodial); United States v. Lee, 699 F.2d 466, 467-68 (9th Cir.1982) (60-90 minute interview was custodial). The duration of Manning’s interview, therefore, weighs heavily in favor of a determination that Manning was in custody when she made her incriminating statements.
The manner in which the agents confronted Manning with evidence of her guilt and — contrary to the majority’s view— pressed her to tell the truth is also consistent with a custodial interrogation. At the beginning of the interview, the agents immediately confronted her with the results of the pathology report, stating that the pathologists “felt” that Manning’s child died from asphyxiation. ER 53. The agents then discussed “red flags” with Manning. These “flags” included an affair Manning had prior to her pregnancy, her husband’s dispute of the child’s paternity, and the fact that Manning was alone with her children at the time of the child’s death because her husband was deployed; all of these circumstances likely would have indicated to a reasonable person in Manning’s situation that she was considered a suspect in the investigation of her child’s death. ER 155. Further, the agents repeatedly “shared” then- personal parenting experiences with Manning in a way that would have suggested to Manning that they believed she was lying, and explicitly told her that they believed that she was not being truthful. ER 157, 159. In fact, Manning finally confessed that she smothered her child just after the agents suggested, for the third time, that Manning’s story ran counter to their own parenting experiences. ER 165.
Under this type of pressure for such a long period of time, “a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.” Thompson v. Keohane, 516 U.S. at 112, 116 S.Ct. 457. Because Manning was in custody, the agents should have advised her of her Miranda rights before interro *38 gating her.[1] As a result, the trial court, in my view, erred in concluding that Manning was not in custody for purposes of Miranda and denying Manning’s motion to suppress her self-incriminating statements. I would therefore reverse and remand for further proceedings.

. My differences with the majority's custody analysis also bear on whether Manning’s consent to search her home was voluntary. In making such a determination, we must look at "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained.” United States v. Jones, 286 F.3d 1146, 1152 (9th Cir.2002) (citing United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1989)). In light of my conclusion that the custody determination should be reversed, I would vacate the district court's ruling that Manning’s consent to search her house was voluntary. Because I would hold that Manning was in custody and therefore entitled to Miranda warnings — two factors that suggest that her consent was not voluntary- — I would instruct the district court to reconsider anew on remand its ruling on the voluntariness of Manning’s consent.