NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10363 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:13-cr-00439-KJD-VCF-1 |
| ANTHONY B. BRANDEL, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10177 |
| Plaintiff-Appellee, | |
| v. | D.C. No. |
| | 2:13-cr-00439-KJD-VCF-3 |
| JAMES WARRAS, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted March 8, 2021
Las Vegas, Nevada

Before: CLIFTON, NGUYEN, and BENNETT, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

In this consolidated appeal, Anthony B. Brandel ("Brandel") and James Warras ("Warras") challenge their convictions for conspiracy, 18 U.S.C. § 371, wire fraud, 18 U.S.C. § 1343, and securities fraud, 15 U.S.C. § 78j(b). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.	Brandel argues that the jury instruction on securities fraud was fatally flawed because it failed to mention the disjunctive three factor test in *Hocking v. Dubois*, 885 F.2d 1449, 1460-61 (9th Cir. 1989) (adopting the test from *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981)). Brandel concedes that plain error review applies because he failed to raise this issue below. *See United States v. Armstrong*, 909 F.2d 1238, 1244 (9th Cir. 1990) (applying plain error review where the defendant fails to object before district court).

Here, the district court correctly provided the three-prong definition of an "investment contract," the relevant security type, from *SEC v. W.J. Howey Co.* (*Howey*), 328 U.S. 293, 298-99 (1946). *Hocking*'s disjunctive three-factor test is an elaboration of the third *Howey* prong and was not plainly required. The *Hocking* factors are needed when, "[o]n the face of a partnership agreement," the investor maintains control, but the reality is different. *Koch v. Hankins*, 928 F.2d 1471, 1477 (9th Cir. 1991) (quoting *Williamson*, 645 F.2d at 424). The joint venture agreements in this case were not facially partnership agreements, despite their label. In fact, the agreements included a "No Partnership Relationship"

2

clause.

Even assuming the district court erred in failing to explain the *Hocking* factors, the absence of that instruction did not affect Brandel's substantial rights. *United States v. Marcus,* 560 U.S. 258, 262 (2010).  The joint venture agreements would clearly satisfy the first disjunctive *Hocking* factor: that the agreement "leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership."  *Hocking*, 885 F.2d at 1460 (quoting *Williamson*, 645 F.2d at 424).  Again, under the terms of the joint venture agreements here, the victims were not partners.  Nor does Brandel dispute that in fact Malom Group AG ("Malom") had the unilateral authority to decline, and always did decline, the victims' investment proposals.

2.     The evidence was sufficient for a rational juror to find the existence of an investment contract supporting Brandel and Warras's securities fraud convictions.  *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Both the joint venture agreements and the funding commitments satisfy the three *Howey* prongs for the existence of an investment contract.

As to the joint venture agreements, each victim "invest[ed] . . . money" with the expectation of financial gain.  *Howey*, 328 U.S. at 298-99.  To the extent the joint venture agreement terms were confusing or contradictory as to whether the

funds were a "fee" or an investment, the standard of review compels resolution of these conflicts in the prosecution's favor. *Nevils*, 598 F.3d at 1163-64; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). The evidence was also sufficient for the jurors to find that the victims who invested in the joint venture agreements expected to profit from the efforts of others. *Howey*, 328 U.S. at 298-99. A rational juror could conclude beyond a reasonable doubt that the victims were dependent on Brandel, Warras, or a "third party," *id.* at 299, for the investment ideas and that the victims' ability to present investment ideas was not tantamount to exercising the full powers of a general partner or joint venturer.

The evidence was also sufficient for a juror to conclude the funding commitments were investment contracts. Gianopoulos expected to be reimbursed for his $1.2 million "underwriting fee," plus either $600,000 if the loan succeeded or $50,000 if it failed. Thus, the jury could have concluded he expected to profit, *Warfield v. Alaniz*, 569 F.3d 1015, 1024 (9th Cir. 2009), even if he also had other motivations to secure the loan. We need not analyze Glazebrook's funding commitment because he signed a joint venture agreement that contemplated sharing profits.

3. The evidence was also sufficient to establish that Brandel and Warras possessed the requisite specific intent to defraud. *See United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016) (conspiracy); *United States v. Miller*, 953 F.3d

1095, 1101 (9th Cir. 2020) (wire fraud); *United States v. Tarallo*, 380 F.3d 1174, 1181 (9th Cir. 2004) (securities fraud). Brandel and Warras argue that they had a good-faith belief in the legitimacy of their activities, but a rational jury could have concluded otherwise. Again, reasonable inferences must be drawn in the government's favor. *McDaniel*, 558 U.S. at 133. For instance, a rational jury could reasonably infer intent to defraud one victim from Appellants' activities in nearly identical setups with other victims. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008).

The evidence was also sufficient for the jury to conclude Warras was part of the conspiracy from the beginning. He received funds in his account as early as January 2010, the same day a victim's funds were released from escrow, and in March 2010, he sent a suspicious email voicing his concern about "someone fronting for some investigative agency." And, although Warras did not meet with victims before they transferred funds, conspirators pursuing the "same criminal objective" need not agree "to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997). In several emails, Warras and the codefendants discuss proof of funds letters that proved to be fraudulent. The jury could also have concluded beyond a reasonable doubt that Warras thought the "Brazilian bonds" were valueless. For instance, in a July 2011 email, Warras instructed an attorney about the need to come up with a "story"

5

about the Brazilian bonds and explained the joint venture agreement was a "file stuffer" with "meaningless" percentages. The jury was free to disregard Warras's explanations and could have reasonably concluded beyond a reasonable doubt that he possessed the requisite intent.

4.    The government did not violate Warras's Fifth Amendment Due Process and Sixth Amendment rights to a fair trial by improperly shifting the burden of proof on the value of the Brazilian bonds. We review this question de novo, *United States v. Coutchavlis*, 260 F.3d 1149, 1156 (9th Cir. 2001), and conclude any constitutional mistake was harmless, *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006). The jury could infer from Warras's suspicious behavior that he thought the bonds were of questionable value. Warras ignores that his suspicious conduct is itself highly suggestive of the bonds' worthlessness, as was his apparent doctoring of a receipt to make the bonds appear legitimate, and his failure to explain persuasively why Malom's bonds would be an exception to his general impression that 95 or 99% of old Brazilian bonds were fraudulent. The government thus satisfied its initial burden to provide evidence permitting the jury to conclude beyond a reasonable doubt that the bonds were worthless.

5.    The district court also properly denied Warras an instruction that the jury had to unanimously find the overt act element of conspiracy and unanimously find that Warras did not have a good faith belief his actions were lawful. While the

6

jury must agree the overt act element is satisfied, it does not have to agree on the factual basis for that element. *United States v. Gonzalez*, 786 F.3d 714, 718-19 (9th Cir. 2015). The district court properly instructed the jury that it had to agree on the crime underlying the conspiracy—either wire or securities fraud. As noted above, the district court also correctly instructed the jury that good faith is a complete defense, and the government bears the burden of proving the lack of good faith.

6. The district court's forfeiture order did not violate Brandel or Warras's Eighth Amendment rights under the Excessive Fines Clause. We review whether a fine is unconstitutionally excessive de novo. *United States v. Bajakajian*, 524 U.S. 321, 336 n.10 (1998). We assume, along with the parties, that the Eighth Amendment applies to the orders in this matter and that the *in personam* forfeiture orders here are punitive. *See United States v. Beecroft*, 825 F.3d 991, 999-1000, 999 n.8 (9th Cir. 2016). The district court imposed forfeiture amounts well below the U.S. Sentencing Guidelines recommended penalties, and the sums were not "grossly disproportional to the gravity of [the] defendant's offense," *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1121 (9th Cir. 2004) (citing *Bajakajian*, 524 U.S. at 334), given the severity of the offenses and the extent of harm to victims. *Id.* at 1121-22. Although the district court did not consider the extent of Brandel and Warras's roles in the overall scheme relative

7

to others, no "rigid" set of factors is required, and the district court properly analyzed the three other considerations often used to measure proportionality. *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003).

**AFFIRMED.**